Carlos RIVERA, Cleofe Rivera, Aida Rivera, Ruben Rivera, Judith Rivera, and Marsha Rivera, Plaintiffs,

v.

Donald FARRELL and City of Chicago, a Municipal Corporation, Defendants.

No. 81 C 7273.

United States District Court, N. D. Illinois, E. D.

April 28, 1982.

Alan H. Slodki, Chicago, Ill., for plaintiffs.

Arthur Mooradian, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Carlos Rivera ("Rivera"), together with five family members, brought this civil rights action pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1983 and 1985,[1] against Chicago Police Officer Donald Farrell and the City of Chicago alleging that he was unlawfully beaten and arrested without probable cause, that family members were physically abused, and that their home was illegally searched by Farrell and other unnamed Chicago police officers on March 11, 1981. Rivera further alleges that the Chicago Police Department and the City of Chicago knew or should have known of "this systematic pattern of conduct"[2] and that their failure to take disciplinary action against the offending officers or compensate plaintiffs for their injuries is the result of their dis-

---

1. Jurisdiction is asserted pursuant to 28 U.S.C. § 1343(3).

2. *See* Complaint at ¶ 10 and note 12, *infra.*

crimination against Latin-Americans.[3] This matter is presently before the Court on the City's motion to dismiss the complaint as to itself for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).[4] For the reasons set forth below, the City's motion will be granted.

The guidelines to be used in considering a motion to dismiss are clear. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). As the United States Court of Appeals for the Seventh Circuit has noted:

> Under the Federal Rules of Civil Procedure, it is well established that, on a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

*Mathers Fund, Inc. v. Colwell*, 564 F.2d 780, 783 (7th Cir. 1977).

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that municipalities and other local government enti-

ties are "persons" subject to liability under the Civil Rights Act of 1871, 42 U.S.C. § 1983,[5] when the constitutional deprivation suffered by the plaintiff can be causally linked to a governmental 'policy' or 'custom'. As Judge Marshall recently noted in *Means v. City of Chicago*, 535 F.Supp. 455, 459 (N.D.Ill., 1982), however, there is some disagreement in this district with regard to the specificity of pleading required in the context of a suit brought against a municipality or other local government entity under section 1983 after *Monell*. Compare *Villa v. Franzen*, 511 F.Supp. 231, 235 (N.D.Ill.1981), and *Thompson v. Village of Evergreen Park, Ill.*, 503 F.Supp. 251, 252 (N.D.Ill.1981), with *Williams v. City of Chicago*, 525 F.Supp. 85, 88–89 (N.D.Ill.1981); *Spriggs v. City of Chicago*, 523 F.Supp. 138, 144–45 (N.D.Ill.1981); *Hamrick v. Lewis*, 515 F.Supp. 983, 986 (N.D.Ill.1981); and *Gomez v. City of West Chicago*, 506 F.Supp. 1241, 1245 (N.D.Ill.1981).

In *Villa* and *Thompson*, for example, Judge Shadur endorsed a liberal standard of pleading in light of what he regarded as the mandate of Fed.R.Civ.P. 8(a) holding that "a plaintiff need only prepare allegations that track the *Monell* requirement of a governmental 'policy' or 'custom' [in order to] step over the very low threshold of *Conley*." *Villa v. Franzen, supra*, 511 F.Supp. at 235.[6] Under this formulation, a complaint against a municipality is apparently sufficient if it states that the plaintiff

---

3. Rivera alleges that neither Farrell nor any of the other unknown officers at the scene were of Latin-American origin. Complaint at ¶ 6.

4. Defendant Farrell has answered the complaint and is not a party to the City's motion to dismiss.

5. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6. In *Villa v. Franzen*, the court held that a complaint alleging that the "acts of [Commission's agents in the hospitals] ... alleged herein were done by [them] ... under color and pretense of the statutes, regulations, customs, and usages of the State of Illinois and its municipal subdivisions ..." stated a claim for relief against the Commission under *Monell*. Apparently, the complaint did not further specify the particular statutes and regulations involved or the general perameters of the allegedly unconstitutional custom or usage, such as whether it was evidenced by more than an isolated instance of misconduct by Commission employees.

was deprived of a constitutionally protected right on one occasion and that the deprivation was caused by an unspecified official policy or custom. The other decisions—*Williams* and *Spriggs*, authored by Judge Getzendanner, and *Hamrick* and *Gomez*, authored by this Court—also acknowledge the relatively low threshold burden of federal notice pleading. These opinions go on to hold, however, that *Monell* implicitly requires that if municipal liability is to be premised upon an unarticulated governmental policy, custom or practice, such custom, policy or practice must be evidenced by more than a single wrongful act. Therefore, a section 1983 plaintiff must plead more than the existence of a single wrongful act allegedly perpetrated by governmental employees coupled with conclusory allegations of custom or policy in order to properly state a claim for relief against a municipality or governmental entity.[7] Rather, in addition to pleading the single allegedly unconstitutional act, the complaint must also contain allegations that envision proof of a pattern of similar incidents of wrongdoing that might evidence the existence of a bonafide policy, custom or practice unofficially sanctioned by the defendant municipality.[8]

Recently, in *Means*, Judge Marshall seemingly endorsed the approach taken by Judge Shadur in *Villa* and *Thompson* but stated that although the complaint in *Means* only detailed the facts of one incident, "it clearly contemplates proof of more than this incident in order to prove the alleged policy; it contemplates proof of numerous instances of misconduct upon which the City failed to act." *Means v. City of Chicago*, 535 F.Supp. 455 at 460 (N.D.Ill., 1982). Thus, the complaint against the City in *Means* was apparently much more detailed than the complaint against the Commission in *Villa*, and was apparently sufficient to satisfy the standard applied in *Hamrick* and *Spriggs*.

The various approaches taken in these opinions evidence the courts' efforts to draw a principled line between the admittedly generous standards of federal notice pleading and the principle that a pleading is insufficient if it merely alleges the conclusions of the pleader without any factual support. *See, e.g., Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979), and cases cited therein. While the opinions cited above do indicate some disagreement, whatever the extent, with respect to the degree of specificity required in pleading a constitutional claim against a municipality under *Monell*, the disagreement apparently only extends to the requirements for pleading a claim based on official acquiescence in a pattern or practice of unconstitutional conduct by municipal employees. The cases discussed above did not involve the other basis for municipal liability articulated in *Monell*, predicated upon an affirmatively promulgated official policy, ordinance, regulation or decision mandating assertedly

---

**7.** Judge Shadur initially subscribed to this point of view in *Magayanes v. City of Chicago*, 496 F.Supp. 812, 814 (N.D.Ill.1981), but then recanted in *Thompson v. Village of Evergreen Park, supra*, and *Villa v. Franzen, supra*, though he has not expressly disavowed *Magayanes* in a published opinion.

**8.** Consistent with the rather low threshold pleading requirement, particularly in civil rights cases, *Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir. 1980), a complainant need not plead the specific details of the similar incidents of misconduct that he contends evidence the existence of a de facto governmental policy, custom or practice. *Spriggs v. City of Chicago*, 523 F.Supp. 138, 144 (N.D.Ill.1981). A complaint is sufficient if it alleges a specific incident of wrongdoing resulting in the deprivation of plaintiff's constitutionally protected interest, the existence of similar such incidents involving either the plaintiff or other similarly situated persons, and a governmental policy or custom pursuant to which such wrongs were perpetrated by governmental employees. *Hamrick v. Lewis*, 515 F.Supp. 983, 986 n.4 (N.D.Ill.1981). A complaint framed in this manner gives the parties an appropriate basis for initiating discovery directed toward proving or disproving the ultimate question of liability under section 1983. As Professor Moore has stated, the function of pleading under the federal rules "is to give fair notice of the claim asserted so as to enable the adverse party to answer and to prepare for trial. . . ." 2A Moore's Federal Practice ¶ 8.13 (2d ed. 1980).

unconstitutional conduct by city employees. In this Court's view, some of the disagreement with respect to the threshold pleading burden in section 1983 cases might be cured or at least placed in proper perspective by a brief discussion of the two predicates for municipal liability identified in *Monell* and the corresponding pleading requirements both in general and in particular application to the case at bar.

In *Monell*, the Supreme Court stated that its "analysis of the legislative history of the Civil Rights Act of 1871 compell[ed] the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." (Emphasis in original). *Monell v. Department of Social Services, supra*, 436 U.S. at 690, 98 S.Ct. at 2035. At the same time, the Court reaffirmed the principle enunciated in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that municipalities could not be held liable on a respondeat superior basis for the constitutional torts of their employees. *Id.*, 436 U.S. at 663 n.7 and 691, 98 S.Ct. at 2022 n.7 and 2036. Accordingly, the Court held that a municipality might be held liable under section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or, "for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.*, 436 U.S. at 690, 98 S.Ct. at 2035–36. In this way, the Court sought to insure that liability would not be imposed upon a municipality simply on a respondeat superior basis on the isolated occasion when a municipal employee breaches official policy and violates a citizen's constitutional rights. Municipal liability would be imposed only if an official, while performing his duties in accordance with official policy, ordinance, regulation, decision or custom, violates another's rights on the theory that a municipality should be held liable when it has established or perpetuated an unconstitutional practice that causes injury to its citizens. *See Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir. 1981).

The first predicate for municipal liability described in *Monell*, based on a 'policy statement, ordinance, regulation, or decision,' implies that the city or agency has taken some type of affirmative action to establish the assertedly unconstitutional policy pursuant to which its employee allegedly deprived another of his or her constitutional rights. This was the situation in *Monell* itself, where the plaintiff challenged the official policy of the Department of Social Services and the Board of Education of the City of New York, embodied in certain rules and regulations of those agencies, which compelled pregnant women employees to take unpaid leaves of absence before such leaves were medically necessary. *Monell v. Department of Social Services of the City of New York*, 532 F.2d 259, 260–61 (2d Cir. 1976), *reversed*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In such a context, it is not necessary to allege anything more than a single incident of unconstitutional conduct coupled with the supposedly unconstitutional affirmative policy that mandated such action [9] in order to state a claim against the city or agency for injury occasioned by its officially adopted position. In most cases involving an affirmative policy statement, statute, ordinance, rule, regulation or decision, the government's official position can be determined by reference to a written codification, memorandum or other document. In some cases, however, an affirmative policy or decision, though unwritten, may have been so clearly articulated by officials either publicly or within the confines of the government itself that it is susceptible of

---

**9.** Of course, it is still necessary to identify the particular policy statement, ordinance, regulation or decision that is alleged to be unconstitutional in order to state a claim for relief. A complaint containing allegations that the plaintiff was injured by acts undertaken pursuant to an unspecified policy, ordinance, regulation or decision is insufficient to apprise the defendant municipality of the nature of the claim being asserted or enable it to prepare its defense.

direct proof establishing its existence.[10] In either case, the affirmative promulgation of the policy, ordinance, regulation, etc. and the single unconstitutional act perpetrated pursuant to that official policy is sufficient to link the municipality to the alleged wrongdoing at the pleading stage.

The second basis for municipal liability under section 1983 discussed in *Monell* arises from the government's passive acquiescence in a pattern or series of incidents of unconstitutional conduct which, in the face of such official acquiescence and tacit authorization, constitutes a 'custom' or 'usage' actionable under the civil rights laws, 42 U.S.C. § 1983. In this context, it is necessary to allege more than a single incident of unconstitutional conduct in order to state a claim for relief under *Monell*. This conclusion appears to follow quite clearly from language in *Monell* and *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), cited and discussed in *Monell* itself. In both cases, the Court made it clear that a de facto custom or usage exists only when it is possible that future behavior will conform to the state's informal command evidenced by its past acquiescence in unconstitutional conduct. In *Adickes*, the Court stated that for purposes of section 1983, a custom or usage is actionable only when it has "the force of

law by virtue of the persistent practices of state officials." *Adickes v. S. H. Kress and Co., supra*, 398 U.S. at 167, 90 S.Ct. at 1613. In *Monell*, the Court cited *Adickes* with approval in its discussion of the second predicate for municipal liability saying that "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell, supra*, 436 U.S. at 691, 98 S.Ct. at 2036.

Since *Monell*, a number of federal courts of appeals, including the United States Court of Appeals for the Seventh Circuit, have held that a section 1983 complaint that purports to state a claim for relief against a municipality based upon its alleged acquiescence in the unconstitutional conduct of its employees but which does not contain allegations that envision proof of a pattern or series of similar incidents of unconstitutional conduct is insufficient to meet even the rather low threshold burden of federal notice pleading.[11] *See, e.g., Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981); *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1323 (5th Cir. 1980); *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir.), *cert. denied sub*

---

10. The Court can envision several examples of such a clearly articulated, though unwritten, policy affirmatively undertaken by a municipality. For example, when a municipal official states publicly that he or she has ordered the police department to take certain actions against a particular segment of the population or when a high city official orders his or her subordinates to take a particular action, the fact that the policy was articulated verbally rather than in writing does not mean that it is any less the affirmative policy of the city, guiding the actions of city employees. In most cases, however, a municipal policy will not be so clearly articulated in the absence of a written statement, ordinance, regulation, etc. so as to constitute an affirmative policy. An unwritten, unarticulated policy is equivalent to a custom of passive acquiescence in unconstitutional conduct which, as discussed more fully in the next part of this opinion, is actionable only in the face of a pattern or series of unconstitutional acts known to and tolerated or tacitly authorized by municipal officials.

11. As the Court indicated earlier in this opinion at note 8, *supra*, a proper complaint need not be overly specific in detailing the other incidents of unconstitutional conduct that evidence a pattern of wrongdoing tolerated by municipal officials consistent with the spare tenets of federal notice pleading. *Murray v. City of Chicago*, 634 F.2d 365 (7th Cir. 1980). The Court notes, however, that even in *Murray*, a decision that is frequently cited for its broad view of federal pleading requirements, the plaintiff alleged that she was wrongfully arrested and that similar unwarranted arrests had occurred frequently with the knowledge of high city officials. The court noted that "[i]f plaintiff succeeds in proving her allegation that similar unwarranted arrests have occurred frequently, to the knowledge of the parties involved, it might be possible to show dereliction of duty of constitutional dimension upon the part of the responsible officials." 634 F.2d at 367.

*nom., Turpin v. West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). This was the basis for the holdings in *Hamrick, Gomez, Spriggs* and *Williams,* discussed earlier in this opinion, since those cases all involved allegations of the City's passive acquiescence in an allegedly unconstitutional pattern of conduct by municipal employees rather than allegations that a written or clearly articulated policy, ordinance, regulation or decision affirmatively mandated the alleged unconstitutional conduct of municipal employees.

As our court of appeals noted in *Sterling v. Village of Maywood,* 579 F.2d 1350, 1356–57 (7th Cir. 1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979), to predicate municipal liability under section 1983 upon the existence of an isolated constitutional wrong perpetrated by a city employee in the absence of an affirmative policy or decision mandating that the employee take such action would amount to visiting liability upon the municipality on the basis of respondeat superior, a result explicitly rejected by the Supreme Court in *Monell. See also Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir. 1981). It is surely not unreasonable to require that a plaintiff seeking to impose liability upon a municipality based on its passive acquiescence in a pattern or practice of unconstitutional acts such as that which caused him injury plead the existence of such a pattern of practice by alleging, at least on information and belief, that he or others similarly situated were victimized on more than one occasion in the unconstitutional manner alleged in the complaint. Such a requirement does not offend the liberal pleading standard of the federal rules; it merely ensures that an essential element of the plaintiff's cause of action be set forth in the complaint. A complaint drafted in this manner adequately frames the issues to be decided at an eventual trial and gives the defendant fair notice of the nature of the claims being asserted.

Although courts frequently use the catchall phrase 'custom, policy or practice' to describe the parameters of municipal liability under *Monell,* this shorthand expression tends to compress the two complimentary bases of liability predicated upon either affirmative municipal action or passive acquiescence in a pattern of unconstitutional conduct. Regardless of the terminology used, it is clear that *Monell* encompasses liability based on both affirmative and passive municipal conduct. In the former instance, a complaint is sufficient if it alleges an instance of unconstitutional conduct perpetrated pursuant to a particular municipal policy, clearly articulated in writing or otherwise. In the latter instance, more is required to link the municipality to the alleged wrongdoing. Accordingly, a complaint is insufficient if it merely asserts that the plaintiff suffered injury as a result of some unspecified 'policy' or 'custom' of the defendant municipality. In order to properly state a claim, a complainant must go beyond such conclusory language and allege the elements of the cause of action encompassed by those terms. Only then are the purposes of federal notice pleading served for both the plaintiff and defendant.

█ In the case at bar, we are concerned with the second basis for municipal liability enunciated in *Monell*; the alleged existence of a custom or practice by which Rivera and his family were allegedly subjected to an unconstitutional deprivation of liberty and property on March 11, 1981. Although Rivera states broadly that he and his family members were deprived of rights secured by the constitution "under color of statute ordinance, regulation, custom or usage," he fails to identify any supposedly infringing statute, ordinance or regulation. Rather, Rivera alleges an isolated instance of police misconduct broken down into several component elements that, according to the complaint, comprise a "systematic pattern of conduct" known to the Chicago Police Department and the City of Chicago.[12] As is readily apparent from the excerpts set forth in the margin, the complaint is ambiguous. It is clear, however, even assuming

---

12. The pertinent portions of the complaint are set forth below:

9. The City of Chicago's Police Department and its individual members, who are agents and employees of defendant City of Chicago,

the truth of all the allegations, that Rivera has not specifically alleged anything more than a single incident of wrongful conduct by Officer Farrell and other unnamed Chicago police officers.[13] Applying the analysis set forth above, Rivera's complaint is clearly deficient in its attempt to state a claim against the City of Chicago.

Accordingly, for the reasons set forth above, the City's motion to dismiss is granted. It is so ordered.

together with persons unknown to the plaintiffs, acting under color of law, have subjected plaintiffs and other persons to a pattern of conduct consisting of and occurring in this instance on March 11, 1981:

(a) Breaking down doors of the plaintiff's dwelling;

(b) Cursing the entire family of plaintiffs;

(c) Beating and causing great bodily harm to the plaintiffs;

(d) Arresting and charging the plaintiff, Carlos Rivera, without probable cause and without a valid warrant;

(e) Break household items in the family's dwelling;

(f) Search the family home and plaintiffs without a valid search warrant;

(g) Was otherwise guilty of unlawful intimidation.

10. This systematic pattern of conduct consists of a large number of individual acts of violence, intimidation, and humiliation visited on plaintiffs and other citizens of the same national origin by members of the Chicago Police Department, agents and employees of the defendant, acting in concert with persons unknown to plaintiffs, and under color of law. . . .

11. Despite the fact that they knew or should have known of the fact that this pattern of conduct was being carried out by their agents and employees, the Chicago Police Department, defendants City of Chicago, and Donald Farrell, and other unknown police officers, have taken no step or effort to order a halt to this course of conduct, to make redress to these plaintiffs or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees or agents.

13. Although the complaint does speak of a "systematic pattern of conduct," that language obviously refers to the six enumerated acts listed in Paragraph 9 of the complaint that allegedly occurred on March 11, 1981. A civil rights plaintiff may not satisfy the "more than one incident" requirement of pleading a custom under *Monell* by dividing what is intrinsically one incident into its component parts.